# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| COLUMBIA MEDICAL CENTER OF PLANO SUBSIDIARY, L.P. D/B/A MEDICAL CITY OF FRISCO, A MEDICAL CITY OF PLANO FACILITY<br><br>                    Plaintiff,<br><br>          v.<br><br>PREMERA BLUE CROSS,<br><br>                    Defendant. | Case No. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES, Plaintiff, COLUMBIA MEDICAL CENTER OF PLANO SUBSIDIARY, L.P. d/b/a Medical City of Frisco, a Medical City of Plano Facility ("Plaintiff"), by and through its attorneys, Polsinelli PC, and complains of Defendant PREMERA BLUE CROSS ("Defendant") as follows:

### STATEMENT OF FACTS

### A. PARTIES

1. Plaintiff, Columbia Medical Center of Plano Subsidiary, L.P. d/b/a Medical City of Frisco, a Medical City of Plano Facility ("Hospital") is a Texas limited partnership with its principal office in Collin County, Texas. The Hospital is a citizen of the State of Texas.

2. Defendant, Premera Blue Cross ("Premera"), is a corporation organized under the laws of the State of Washington doing business in Texas. Premera is a citizen of the State of Washington. Premera does not maintain a regular place of business in Texas and does not have a designated agent for service of process. This lawsuit arises from Premera's business in Texas, and it may therefore be served through the Texas Secretary of State pursuant to Tex. Civ. Prac. & Rem.

Code § 17.044(b). Premera's home office is located at 7001 220th St. SW, MS 316, Mountlake Terrace, Washington 98043. Premera is a licensee of the Blue Cross and Blue Shield Association and is licensed to offer Blue Cross and Blue Shield branded health insurance plans in the State of Washington. As explained below, Premera's Subscribers are not confined to the State of Washington, and routinely receive hospital services in other states, including Texas, for which Premera is responsible.

### B. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Premera because it conducts substantial business in Texas, and a substantial part of the events or omissions giving rise to the Hospital's claims occurred here. Premera insures and administers health plans and health insurance policies that cover Texas residents, including the Premera Subscriber whom the Hospital treated in this case. Premera therefore does business in the State of Texas for purposes of personal jurisdiction, and it is reasonably foreseeable that it would be brought into a Texas court for its actions in connection with insuring and administering health plans that cover health services provided to its Subscribers in Texas.

4. This Court has subject-matter jurisdiction because this dispute is between citizens of different states (the Hospital is a citizen of the State of Texas, and Premera is a citizen of the State of Washington) and involves an amount in controversy of greater than $75,000.

5. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district—as described below, the facilities in which medical services were provided to the Premera Subscriber is located in Frisco, Texas, which is located in the Eastern District of Texas, thus making venue proper under 28 U.S.C. § 1391(b)(2). Venue is also proper under 29

U.S.C. § 1132(e)(2) because the Hospital has asserted a claim under ERISA and the breach of the health plan at issue also took place (in part) in this judicial district, as Premera denied reimbursement for medical services provided in the Eastern District of Texas.

### C. FACTUAL BACKGROUND

#### I. THE BLUECARD PROGRAM

6. The Hospital is an acute care hospital located in Frisco, Texas. The Hospital provides medically necessary services to the Frisco and surrounding communities.

7. As part of its provision of medically necessary services to the communities it serves, the Hospital is contracted with non-party Blue Cross Blue Shield of Texas ("BCBSTX") through a Hospital Agreement for PPO/POS Network Participation (eff. Nov. 1, 2016) (as amended, the "Agreement"). The Agreement specifies the terms and conditions under which the Hospital will treat patients with Blue Cross and Blue Shield ("BCBS") health plans (referred to in the Agreement as "Subscribers") and be reimbursed for that treatment. Under the Agreement, the Hospital is entitled to be paid specified rates for the provision of medically necessary services to a Subscriber.

8. The Agreement is far broader than the relationship between just the Hospital and BCBSTX and Subscribers enrolled in a BCBSTX health plan, however. The Agreement applies to the treatment that the Hospital provides to any Subscriber enrolled in a BCBS health plan, including Subscribers who have BCBS health insurance through another state's Blue Cross and/or Blue Shield licensee (like Premera). Thus, the Agreement applies to treatment that the Hospital provides to Premera Subscribers.

9. When the Hospital treats a Subscriber who has a BCBS-branded health plan that is administered or underwritten by a Blue Cross (and Blue Shield) licensee other than BCBSTX, the

Agreement still governs the Hospital's provision of that treatment and reimbursement for it. The Hospital's request for payment (referred to as a "Claim") is handled through a system known as the "BlueCard Program." Under the BlueCard Program, the Hospital submits its claim to BCBSTX for the services it provided to a Subscriber. BCBSTX then reviews the claim, determines the amount that would be payable under the Agreement for the services that the Hospital provided to the Subscriber, and forwards the claim to the BCBS health plan that covers the Subscriber (referred to as the "Home Plan"). The Home Plan then applies the Subscriber's health benefits, makes coverage determinations, and either denies payment for the services, or approves payment. BCBSTX then transmits the Home Plan's decision and payment to the Hospital. Importantly, the payment rates specified in the Agreement between BCBSTX and the Hospital govern the amount the Hospital is entitled to be reimbursed for the services provided to the Subscriber, regardless of whether that Subscriber is a participant in a BCBSTX health plan or another state's BCBS health plan.

10. As is explained in more detail below, this dispute involves the Hospital's provision of hospital services to a Premera Subscriber that is payable under the Agreement and for which Premera incorrectly refused to pay the Hospital. The Subscriber received covered services from the Hospital, and Premera is obligated to approve coverage for those services under the Subscriber's respective health plan and issue payment to the Hospital for same.

    **II.**    **FACTS CONCERNS PRESENT CLAIM**

11. <u>Patient No. 1- M.M.- Admitted December 26, 2018, Discharged December 28, 2018</u>: On December 26, 2018, M.M., a 37-year-old female with a history of chronic low back pain, generalized anxiety disorder, hypothyroidism, and a previous failed lumbar spinal surgery presented to the Hospital for a scheduled lumbar spinal fusion surgery. M.M. suffered from

recurrent disk herniation of her L4-L5 vertebrae with severe spondylosis, severe right L5-S1 radiculopathy secondary to facet arthropathy and a failed spinal stimulator. M.M. underwent a re-exploration of her L4-L5 and L5-S1 vertebrae with Amendia pedicle screw fusion, a bilaterally in situ fusion of her L4-L5 and L5-S1 vertebrae with bone marrow aspirate stem cells drawn from her right L4 pedicle, combined with mosaic calcium phosphate silicate for Onlay fusion of her L4-L5 vertebrae. M.M.'s neurosurgeon performed a complete facetectomy, osteotomy, and a right side L4-L5 and L5-S1 vertebrae resection with complete foraminotomies and drilling transpedically off the superior pedicle of her L5 vertebra with microscope guidance and bi-planar fluoroscopy. The neurosurgeon also performed an anterior lumbar interbody fusion and an intraoperative placement of a right L5 vertebra epidural steroid injection with Kenalog, with OsteoVation bone cement coated on all screws to enhance bone purchase. Finally, the neurosurgeon removed a Boston Scientific battery, re-implanted a St. Jude Abbott spinal cord stimulator and performed an anterior exposure of M.M.'s L4-L5 and L5-S1 vertebrae disk space. M.M. was admitted as an inpatient following the surgery due to significant post-operative pain that required additional medication and treatment.

12. M.M. began advancing her diet shortly after the surgery, and a pain pump was initially utilized to help M.M.'s pain levels. M.M. then transitioned to oral pain medication, and experienced an advancement in mobility when wearing a brace. Once M.M.'s physicians deemed her stable on December 28, 2018, M.M. was discharged home.

13. M.M. preregistered for her surgery at the Hospital on December 19, 2018. On December 20, 2018, the Hospital called Premera and spoke with a Premera representative, who provided call reference no. 183540003933, stated that Premera required authorization for all inpatient services, and noted that Premera had no record of a preauthorization request for M.M.'s

scheduled surgery. The Hospital followed up with M.M.'s neurosurgeon's office regarding preauthorization that same day. The Hospital called Premera again on December 20, 2018, and spoke with another Premera representative, who stated that Premera had received a request for prior authorization for M.M.'s spinal surgery on December 18, 2018 and that it was pending. The Premera representative was made aware that surgery was scheduled for the morning of December 26, 2018. Further, this Premera representative stated that Premera would be closed for the holidays and if the prior authorization request was not determined by December 20, 2018, Premera would issue a decision by 6 a.m. P.S.T. on December 26, 2018. On December 26, 2018 (the day of M.M.'s surgery), the Hospital received notice from a Premera utilization management representative that Premera had authorized M.M.'s surgery as well as three days of inpatient care under authorization number 180223151. Hospital relied on the authorization to proceed with the surgery as scheduled.

14.     Contradicting its previous notice of authorization on December 26, 2018, Premera later sent the Hospital (and M.M.) a letter dated December 31, 2018, denying authorization of M.M.'s previously-performed surgery, asserting it was not medically necessary. Further, this letter cited two Premera Medical Policies as the reason for the denial: (1) Policy 7.01.551 – Lumbar Spine Decompression Surgery: Discectomy, Foraminotomy, Laminotomy, Laminectomy; and (2) Policy 7.01.542 – Lumbar Spinal Fusion. Premera's letter stated that Premera did not approve M.M.'s spinal decompression surgery and fusion because M.M.'s medical records purportedly did not show that M.M.'s back would be unstable after the decompression surgery unless M.M. underwent a fusion, or that M.M.'s physician had ruled out other sources of low back pain.

15.     The Hospital timely submitted its claim for reimbursement for the services it provided to M.M. (Claim No. 2019004505381XOX) to BCBSTX on January 4, 2019, which determined the amount payable to the Hospital under the Agreement and transmitted the claim to

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                                     6
90020181.3

Premera to adjudicate coverage and benefits.[1] By remittance dated March 4, 2019, Premera denied the Hospital's claim. The remittance did not provide a denial reason; indeed, it stated that $189,789.15 in charges (the exact amount due under the Agreement) were covered, but it also stated that the Hospital's total charges were patient responsibility. The Hospital therefore called BCBSTX on April 9, 2019, and spoke to a BCBSTX representative, who provided call reference number 1-14192608216, informed the Hospital that M.M. had corrected a coordination of benefits issue, and stated that BCBSTX had sent the claim back to Premera for reprocessing. The Hospital then uploaded M.M.'s medical records and other requested documents to BCBSTX, for forwarding to Premera, on April 11, 2019.

16.     Premera denied the Hospital's claim again on April 25, 2019. Premera's remittance again did not provide a denial reason, and it again stated that the amount due under the Agreement was the amount of covered charges (and that the Hospital's total charges were patient responsibility). The Hospital therefore followed up with BCBSTX on April 26, 2019 and spoke with a BCBSTX representative, who provided call reference number 1-14305160451 and explained that this claim may be a worker's compensation case based on M.M.'s questionnaire, and that Premera denied the claim for a purported lack of medical necessity. Then, on April 30, 2019, the Hospital called BCBSTX and spoke with a BCBSTX representative, who stated that BCBSTX did not forward M.M.'s medical records to Premera because the claim was under adjustment.

---

[1] As is customary in the healthcare industry, the Hospital submits claims to and receives payment information from insurers such as BCBSTX electronically.  An electronic remittance advise is issued from an insurer to a provider and contains, among other information, codes explaining the insurer's adjudication of the claim; it generally includes the same or similar information as the explanation of benefits sent to the Subscriber

17.     The Hospital then timely submitted an appeal, which enclosed M.M.'s medical records and requested a medical necessity review. The Hospital followed up with BCBSTX on May 17, 2019, and spoke to a BCBSTX representative, who provided call reference number 1-14446347195 and stated that Premera had upheld its medical necessity denial. BCBSTX sent a letter dated May 21, 2019, on behalf of Premera, confirming this decision to the Hospital.

18.     The Hospital therefore submitted a second level appeal on May 23, 2019, again enclosing M.M.'s medical records and requesting a medical necessity review. The Hospital called BCBSTX on June 13, 2019, and spoke with a BCBSTX representative, who provided call reference number 1-14613404428 and informed the Hospital that BCBSTX forwarded the appeal to Premera on June 4, 2019. By letter dated June 13, 2019, BCBSTX, on behalf of Premera, stated that the second level appeal was untimely on the ground that the deadline was March 10, 2019, and that the Hospital had no additional appeal rights. The Hospital followed up with BCBSTX on June 21, 2019, and spoke to a BCBSTX representative, who provided call reference number 1-14663915415 and stated that Premera denied the appeal for timely filing, and asserted that the Hospital had 60 days from Premera's letter dated December 31, 2018, to file an appeal. Under either Premera's Provider Manual (must file appeal within 60 days from the date notice is provided of first level appeal denial) or BCBSTX's Provider Manual (no time stated to file second level appeal, but first level appeal must be filed within 180 days following denial and explanation of payment) this assertion is incorrect.

19.     Premera's denial of payment for M.M.'s lumbar spinal fusion and resulting inpatient stay from December 26-28, 2018, as not medically necessary constituted a wrongful denial of benefits and should be reversed. First, as explained above, Premera informed the Hospital on December 26, 2018—the day of M.M.'s surgery—that it had approved M.M.'s neurosurgeon's

December 18, 2018, prior authorization request under authorization no. 180223151. Premera also authorized three days of inpatient care following the surgery. The Hospital relied upon these representations in moving forward with the surgery. Texas law therefore prohibits Premera from retroactively denying payment on medical-necessity grounds. *See* Tex. Ins. Code § 1301.135(f).

20. Moreover, as the Hospital explained in detail in its appeals and as established by M.M.'s medical records, M.M.'s lumbar spinal fusion surgery, and the accompanying inpatient admission, were medically necessary and payable under the Agreement. With respect to M.M.'s lumbar spinal fusion, M.M. met the required criteria contained in Premera Medical Policy 7.01.542 – Lumbar Spinal Fusion (the "Policy").

21. The Policy provides that lumbar spinal fusions are medically necessary "for recurrent, same level, disc herniation when ALL of the following are present:

  (1) At least 3 months have passed since the original disc surgery; AND

  (2) Recurrent neurogenic symptoms (radicular pain or claudication) and evidence of nerve-root irritation, as demonstrated by a positive nerve-root tension sign or positive femoral tension sign or a corresponding neurologic deficit; AND

  (3) Impairment or loss of function; AND

  (4) Unresponsive to at least 3 months of conservative nonsurgical care OR with severe or rapidly progressive symptoms of motor loss, neurogenic claudication or cauda equina syndrome; AND

(5) Neutral structure compression or instability documented by imaging at a level and side corresponding to the clinical symptoms." (Policy at p. 4.)

22. M.M.'s medical records establish each of these criteria:

(a) M.M.'s prior L4-L5 microdiscectomy was performed December 12, 2014. The neurosurgeon's September 18, 2018 consultation note recounts that M.M. had an L4-L5 discectomy about 17 years ago and an L4-L5 and L5-S1 discectomy in 2014.

(b) The neurosurgeon's September 18, 2018 consultation note describes M.M.'s complaints of progressive low back pain, as well as pain in both of her legs: "She states in January [2018] she was having pain once every couple of months. The pain has been progressively getting worse and is now about twice per month and it is lasting up to two weeks. . . . She states she cannot sit or stand for any length of time because her 'torso feels like it is in a vice.' She reports shooting pain in her right hip as well as her anterior thigh." The neurosurgeon's November 27, 2018 consultation note reiterates M.M.'s progressively increasing pain, as well as the fact that "[h]er spinal cord stimulator is not controlling her back pain." Finally, M.M.'s November 16, 2018 CT scan report identified diffuse disc degeneration between M.M.'s L4-L5 and L5-S1 vertebrae, and mild-to-moderate left foraminal stenosis at the L5-S1 vertebrae.

(c) The neurosurgeon's September 18, 2018 consultation note states that M.M. "cannot sit or stand for any length of time because her 'torso feels like it is in a vice,'" and that standing causes her pain to worsen.

(d) In M.M.'s December 26, 2018 Operative Report, the neurosurgeon emphasized that M.M. underwent her lumbar spinal fusion after "extensive preoperative counseling and failing all conservative care including physical therapy, injections and chiropractic care." Additionally, on November 16, 2018, M.M. underwent a pain management procedure with a pain management anesthesiologist; the anesthesiologist reported in the Operative Report that M.M. underwent the procedure after her pain had "failed to respond to all conservative measures."

(e) M.M.'s November 16, 2018 CT scan report identified diffuse disc degeneration between M.M.'s L4-L5 and L5-S1 vertebrae, mild-to-moderate left foraminal stenosis at the L5-S1 vertebrae, and showed that M.M. suffered from diffuse disc generation/grade 4 tear at her L4-L5 vertebrae. Additionally, the results indicate associated large right paracentral disc protrusion, and that the right lateral recess and right neural foramen were surgically decompressed. M.M. therefore met each of the Policy's criteria.

23. With respect to M.M.'s inpatient admission, M.M.'s lumbar spinal fusion (CPT Code 22558) is included in the Centers for Medicare & Medicaid Services ("CMS") Addendum E inpatient-only list, which identifies what types of procedures should be performed as inpatient

procedures only. Moreover, each day of M.M.'s inpatient admission qualified for inpatient status under the InterQual criteria (evidence-based guidelines used to support clinical decision making in the healthcare industry). M.M.'s lumbar spinal fusion was therefore medically necessary, as was her resulting inpatient admission. As such, Premera's denial of M.M.'s lumbar spinal fusion and inpatient admission is erroneous and should be reversed.

24. In sum, the Hospital provided medically necessary services to M.M. and is entitled to payment in full for those services. According to the term of the Agreement, the Hospital is entitled to be paid $189,789.15 for the medically necessary services provided to M.M.

25. The Hospital has provided pre-suit notice to Premera of its wrongful denial of benefits for M.M.'s hospital services.

26. The Court should therefore determine that Premera's denial of payment to the Hospital for the treatment it provided to the Subscriber described above was a wrongful denial of benefits, and order Premera to pay the Hospital the total amount due under the Agreement of $189,789.15.

### D.   CAUSES OF ACTION

**COUNT I- FAILURE TO COMPLY WITH HEALTH BENEFIT PLAN IN VIOLATION OF ERISA**

27. The foregoing paragraphs are incorporated by reference.

28. As explained above, the Hospital provided medically necessary covered services to the Subscriber described above, who was a Premera Subscriber. The Hospital is therefore entitled to be paid the amounts due under the Agreement for that care.

29. Premera is an indirect Party to the Agreement, as the Agreement applies to the Hospital's treatment of its Subscribers. The Hospital is also entitled to payment under the terms of the Subscriber's health insurance policy, because the inpatient admission was a medically necessary covered service that is covered by such Subscriber's health plan.

30. Upon information and belief, the Subscriber whose hospital admission is at issue is a Subscriber to an employer-sponsored health plan that Premera administers or underwrites. Thus, the Employee Retirement Income Security Act of 1974 ("ERISA") governs this health plan.

31. The Hospital is entitled to enforce the terms of the Subscriber's health insurance plan as the Subscriber's assignee under 29 U.S.C. § 1132(a)(1)(B). Upon admission to the Hospital, the Subscriber signed a form, often referred to as Conditions of Admission, that included an assignment of the Subscriber's health insurance benefits to the Hospital.

32. As explained above, the Hospital provided medically necessary services to the Subscriber at issue. Those services qualify as covered services under the Subscriber's health plan, and Premera is therefore obligated to provide benefits coverage for the medical necessary services provided by the Hospital.

33. As explained above, Premera failed to pay the Hospital for the covered services that it provided to the Subscriber. Premera's wrongful adverse benefit determination for the medically necessary inpatient hospital services that the Hospital provided to the Subscriber breached the terms of the Subscriber's health plan, which the Hospital has standing to sue under through the Subscriber's assignments of benefits.

34. Further, in addition to Premera's general violation of ERISA, as noted above, Premera also specifically violated 29 C.F.R. §2560.503-1(g) and 45 C.F.R. § 147.136(b)(2)(ii)(E), because, in summary, the adverse benefit determination provided by Premera to the Hospital did

not include (a) the reason or reasons for the adverse benefit determination, or (b) an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

35. As a proximate result of Premera's breach of the Subscriber's health plan, the Hospital has been damaged in an amount in excess of the jurisdictional limits of this Court. The Hospital is entitled to recover payment in an amount not less than $189,789.15 for the medically necessary covered services it provided to the Subscriber as pleaded above.

### COUNT II- BREACH OF CONTRACT (FOR PLANS NOT SUBJECT TO ERISA)

36. The foregoing paragraphs are incorporated by reference.

37. As alleged above, the Hospital provided medically necessary covered services to the Subscriber whose hospital admission is at issue, and those services are covered under the terms of the Subscriber's health plan. To the extent that health plan is not subject to ERISA, the Hospital is entitled to recover payment under the plan under a common law claim for breach of contract.

38. Each health plan is a contract between the Subscriber and Premera under which Premera agrees to cover medically necessary covered medical services that the Subscriber receives. The Hospital has standing to sue for breach of contract for Premera's failure to pay for this Subscriber's hospital admission because the Subscriber assigned their health insurance benefits to the Hospital.

39. The Hospital performed its obligations under the Subscriber's health plans by providing medically necessary covered services to the Subscriber.

40. Premera breached the Subscriber's health plans by failing to issue payment to the Hospital at the rates set forth in the Agreement for the medically necessary covered services that the Hospital provided.

41. The Hospital suffered damages due to Premera's breach of the Subscriber's health plan; specifically, the Hospital was entitled to be reimbursed in an amount not less than $189,789.15 under the Agreement for the medically necessary covered services that the Hospital provided.

### CONDITIONS PRECEDENT

42. All conditions precedent have been performed or have occurred.

### ATTORNEY'S FEES

43. The foregoing paragraphs are incorporated by reference.

44. The Hospital is entitled to an award of attorneys' fees under 29 U.S.C. § 1132(g) and Tex. Civ. Prac. & Rem. Code §§ 38.001.

### JURY DEMAND

The Hospital hereby demands a trial by jury of the above-styled action for all claims for which a jury is available.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Columbia Medical Center of Plano Subsidiary, L.P. hereby requests that Defendant Premera Blue Cross be cited to appear and answer this Original Complaint, and that upon final trial and determination thereof, that judgment be entered in favor of the Hospital awarding it the following relief:

A. The amount due under the Agreement and the terms of the Subscriber's Premera health plan;
B. Reasonable attorneys' fees and court costs; and

C. Such other and further relief to which the Hospital may be entitled.

Dated this the 13th day of June 2023.

                Respectfully submitted,

                POLSINELLI PC

                */s/ Adam D. Chilton*
                Adam D. Chilton
                TX State Bar No. 24092255
                POLSINELLI PC
                2950 N. Harwood, Suite 2100
                Dallas, Texas 75201
                Telephone: (214) 661-5515
                Facsimile:  (214) 279-2335
                adam.chilton@polsinelli.com

                *Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff hereby certifies that the foregoing document was e-filed with the Court on June 13, 2023.

                */s/ Adam D. Chilton*